O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

MARIA MARCELLA PEDROZA,

                Plaintiff,

        vs.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

                Defendant.

Case No. SACV 14-1005 RNB

ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS

      The Court now rules as follows with respect to the two disputed issues listed in the Joint Stipulation.[1]

//

//

//

---

[1]      The decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

**A.    The ALJ failed to properly consider the treating physician's and medical expert's opinions (Disputed Issue One).**

Disputed Issue One is directed to the ALJ's consideration of the opinions of the treating physician and the non-examining medical expert. (See Jt Stip at 6-17.)

The law is well established in this Circuit that a treating physician's opinion is entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996); Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991). Where, as here, the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. See, e.g., Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

"Less weight is given to the opinion of a non-examining source than to an examining source." Hill v. Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012) (citing Lester, 81 F.3d at 830-31). "A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984)

1  (citation omitted); see also Pitzer v. Sullivan, 908 F.2d, 502, 506 n.4 (9th Cir. 1990)

2  (the opinion of a non-examining physician, "with nothing more," cannot by itself

3  constitute substantial evidence).  However, "the findings of a non-treating, non-

4  examining physician can amount to substantial evidence, so long as other evidence

5  in the record supports those findings."  See Saelee v. Chater, 94 F.3d 520, 522 (9th

6  Cir. 1996); see also Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995);

7  Magallanes, 881 F.2d at 752.

8

9      Dr. Flores

10     In 2011 and 2012, Dr. Flores, plaintiff's treating physician, issued several

11  assessments about plaintiff's limitations, in the form of questionnaires and letters.

12  (See AR 484-91, 566-67, 808-15, 817-18.)  Dr. Flores's assessments were based on

13  plaintiff's degenerative disc disease of the lumbar spine, sciatica, right shoulder pain,

14  arthritis in both knees, obesity, and osteopenia.  (See AR 484, 565, 566, 808, 818.)

15  In pertinent part, Dr. Flores opined that plaintiff would be limited to standing or

16  walking for a total of 0-1 hour in an eight-hour workday; sitting for a total of three

17  hours in an eight-hour workday; and lifting no weight.  (See AR 810, 811.)  Dr.

18  Flores also noted that plaintiff limped with ambulation (see AR 808) and opined that

19  she "should be classified with a disability that will last longer than 12 months in

20  duration" (see AR 566, 818).

21     The ALJ gave "little weight" to Dr. Flores's assessments for three reasons.  The

22  Court finds that none of the three reasons was legally sufficient.

23     One of the ALJ's reasons for according little weight to Dr. Flores's assessments

24  was that Dr. Flores's conclusion that plaintiff was disabled concerned an issue

25  reserved to the Commissioner.  (See AR 29.)   While the Court concurs that a

26  disability determination involves an issue reserved to the Commissioner, the ALJ's

27  reasoning here is non-responsive to Dr. Flores's opinion about plaintiff's ability to

28  work, which was based on objective medical evidence and which the ALJ therefore

3

1  could not reject without proffering legally sufficient reasons.  See Hill, 698 F.3d at

2  1160 (ALJ was required to consider physician's opinion that claimant was unlikely

3  to work full time because it was an assessment based on objective medical evidence);

4  see also Reddick, 157 F.3d at 725 (ALJ must provide legally sufficient reasons to

5  reject a treating physician's opinion on "the ultimate issue of disability – the

6  claimant's ability to work").

7        Another reason proffered by the ALJ was that Dr. Flores's assessments were

8  "conclusory and unsupported by the record" and that "his treatment notes do not

9  support the extreme limitations he assessed."  (See AR 29.)  While the ALJ cited

10 large parts of the treatment record that purportedly supported this reason (see AR

11 309-62, 456-83, 570-612, 715-34, 796-806), the ALJ failed to explain how any of this

12 evidence undermined Dr. Flores's assessments.  Accordingly, the Court finds that this

13 vague reason is not sufficiently specific to constitute a legally sufficient reason to

14 accord little weight to Dr. Flores's assessments.  See Embrey v. Bowen, 849 F.2d

15 418, 422 (9th Cir. 1988) ("To say that medical opinions are not supported by

16 sufficient objective findings or are contrary to the preponderant conclusions

17 mandated by the objective findings does not achieve the level of specificity our prior

18 cases have required."); Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989)

19 (same); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("The ALJ must do

20 more than offer his conclusions.  He must set forth his own interpretations and

21 explain why they, rather than the doctors', are correct.") (citing Embrey, 849 F.2d at

22 421-22); Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299

23 (9th Cir. 1999) ("[C]onclusory reasons will not justify an ALJ's rejection of a medical

24 opinion.").

25       The final reason proffered by the ALJ for according little weight to Dr. Flores's

26 assessments was that "[w]hile there was objective evidence showing some

27 abnormalities in the knees and back, the evidence of record did not document any

28 difficulties with station or gait."  (See AR 29.)  To the contrary, the evidence of

4

1  record did document plaintiff's difficulties with station or gait.  In August 2011,
2  plaintiff sought medical attention for problems with walking, whereupon she was
3  assessed with "impaired balance" and "impaired ambulation" and was prescribed
4  knee braces and "gait training," among other therapies.  (See AR 410-15; see also AR
5  364-65, 493.)

6      The Court therefore finds that the ALJ failed to properly consider the treating
7  physician's opinions.

8

9      Dr. Brahms

10     Dr. Brahms, a non-examining medical expert, testified at plaintiff's
11 administrative hearing that plaintiff was a morbidly obese diabetic individual with
12 various conditions, including lower back pain, carpal tunnel syndrome, and problems
13 with both knees and right shoulder.  (See AR 48-49.)  Dr. Brahms also testified that,
14 "principally because of her obesity and diabetic status affecting the major parts of her
15 knees, low back region, and so forth, she's limited to sedentary activity."  (See AR
16 49.)

17     The ALJ gave "less weight" to Dr. Brahms's opinion than to other medical
18 source opinions for two reasons.  The Court finds that neither reason was based on
19 a contradiction of Dr. Brahms's opinion by the other evidence in the record; rather,
20 the Court finds that other evidence in the record supported Dr. Brahms's findings.

21     First, the ALJ noted that record showed that plaintiff was diagnosed with only
22 pre-diabetes, not diabetes, and that there was no evidence of any problems related to
23 this condition.  (See AR 29; see also AR 309.)  Although the Court concurs that the
24 record does not contain evidence of diabetes but only of pre-diabetes, the Court does
25 not find this to be necessarily inconsistent with Dr. Brahms's reference to plaintiff's
26 "diabetic status."  Moreover, the Court notes that the basis of Dr. Brahms's opinion
27 was not merely diabetes, but plaintiff's several other conditions, all of which were
28 well-supported by the treating medical record.  Specifically, the treating medical

record contains voluminous evidence that plaintiff had symptoms from morbid obesity (see, e.g., AR 280, 316, 318, 427, 436), problems in her lower back and both knees (see, e.g., AR 456, 459, 522, 532), carpal tunnel syndrome (see, e.g., AR 267, 285, 304), and problems in her right shoulder (see, e.g., AR 456, 708). Accordingly, the Court finds that the ALJ's undue focus on Dr. Brahms's reference to plaintiff's "diabetic status" did not give rise to a legally sufficient reason to discount Dr. Brahms's opinion.

Second, the ALJ found that "the treatment notes did not document any difficulties with ambulation." (See AR 29.) To the contrary, as the Court noted above in the case of Dr. Flores, the treatment notes did document difficulties with ambulation.

Accordingly, the Court finds that the ALJ also failed to properly consider the medical expert's opinion.

**B.    The ALJ failed to make a proper adverse credibility determination (Disputed Issue Two).**

Disputed Issue Two is directed to the ALJ's adverse credibility determination with respect to plaintiff's subjective symptom testimony. (See Jt Stip at 17-22.)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12

1  F.3d 915, 918 (9th Cir. 1993); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 343 (9th Cir. 1991)

2  (en banc).

3       Plaintiff testified at the hearing that she could no longer work because her

4  conditions limited her to lifting 10 pounds, walking for one-half block, writing for 1-

5  2 minutes at a time, typing for three minutes at a time, and sitting for 30 minutes at

6  a time.  (<u>See</u> AR 51, 55, 56-58.)  In addition to providing testimony at the hearing,

7  plaintiff completed an Adult Function Report in which she described her activities as

8  reading, watching television, drawing, visiting family once per week, attending class

9  for a learning disability, light cooking for 20-30 minutes at a time, housework for 30-

10 45 minutes at a time, and shopping once per week for 30-40 minutes.  (<u>See</u> AR 202-

11 09.)

12      The ALJ determined that although plaintiff's medically determinable

13 impairments could reasonably be expected to cause the alleged symptoms, plaintiff's

14 statements concerning the intensity, persistence, and limiting effects of these

15 symptoms were not credible to the extent they were inconsistent with the ALJ's RFC

16 assessment. (<u>See</u> AR 26-27.) In support of this adverse credibility determination, the

17 ALJ proffered three reasons.  (<u>See</u> AR 26, 27.)  The Court finds that none of the three

18 reasons was a legally sufficient reason on which the ALJ could properly rely in

19 support of his adverse credibility determination.[2]

20

21

22      [2]      The Commissioner posits a fourth possible reason for the ALJ's adverse
    credibility determination: plaintiff was laid-off from her latest job. (<u>See</u> Jt Stip at 21;

23 <u>see also</u> AR 51.)  Although the ALJ did note in his summary of the evidence that
    plaintiff had been laid-off (<u>see</u> AR 26), the ALJ made no finding later in his decision

24 that this evidence supported the ALJ's conclusion that plaintiff's subjective symptom
    testimony was not credible.  Accordingly, the Court cannot consider the evidence that

25

26 plaintiff had been laid-off as a part of the ALJ's adverse credibility determination.
    <u>See</u> <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197, 1201 (9th Cir. 1990) (rejecting link

27 between ALJ's finding about evidence of claimant's daily activities with adverse

28                                                              (continued...)

7

One of the reasons proffered by the ALJ was that the evidence of record documented conservative care consisting of mild pain relievers. (See AR 26, 27.) In general, "evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment," and a prominent example of conservative treatment is use of only over-the-counter pain medication. See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007); Osenbrock v. Apfel, 240 F.3d 1156, 1166 (9th Cir. 2001) (ALJ properly rejected excess symptom testimony where claimant had not been using a strong Codeine or Morphine based analgesic). Here, however, the record reflects that plaintiff's prescribed treatment included prescription pain medications such as Vicodin, Neurontin, Flexeril, and Naprosyn; multiple courses of physical therapy; regular exercises; braces on both legs; cortisone injections; and pain management therapy. (See, e.g., AR 757, 816-17.) The Court cannot find that the ALJ's lay analysis of this treatment as conservative or mild was a legally sufficient basis for the ALJ's adverse credibility determination, particularly because no medical expert characterized this treatment as conservative or incommensurate with plaintiff's subjective symptom complaints. See Garrison v. Colvin, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) (doubting that epidural injections constituted conservative medical treatment); Kager v. Astrue, 256 F. App'x 919, 923 (9th Cir. 2007) (rejecting ALJ's characterization of claimant's treatment as conservative where she took prescription

---

[2](...continued)

credibility determination in other portion of decision where ALJ did not "specifically link" the evidence to his conclusion that claimant's excess pain testimony lacked credibility); see also Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014) (rejecting link between ALJ's findings about medical record and adverse credibility determination elsewhere in the opinion where the ALJ "never stated that he rested his adverse credibility determination on those findings" and "did not make a specific finding linking a lack of medical records to Claimant's testimony"); Vasquez v. Astrue, 572 F.3d 586, 592 (9th Cir. 2009) (declining to attribute ALJ's discussion of physicians' opinions to adverse credibility determination in other portion of ALJ's decision).

8

pain medication, sought and received treatment from massage therapists and physical therapists, regularly performed exercises, and repeatedly sought treatment); see also Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) ("The ALJ and the judge may not impose their own respective notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered. . . . A circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.") (citation and internal quotation marks omitted); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ's lay conclusions from the medical evidence were invalid where no medical opinion in the record suggested that claimant's course of treatment was incommensurate with his purported ailment); cf. Olsen v. Colvin, 551 F. App'x 868, 875 (7th Cir. 2014) (upholding ALJ's characterization of claimant's treatment as conservative where at least one orthopedic surgeon described it as such).

Another reason proffered by the ALJ for his adverse credibility determination was that plaintiff's daily activities required physical and mental capabilities replicating those necessary for obtaining and maintaining employment. (See AR 26.) Specifically, the ALJ noted that plaintiff's activities included going out, doing household chores, preparing meals, visiting with family on a regular basis, and attending school. (See id.) However, the Court finds that the evidence of plaintiff's daily activities, in their fuller context, was not a legally sufficient basis for the ALJ's adverse credibility determination. See Reddick, 157 F.3d at 722-23 and n.1 (ALJ's adverse credibility determination premised on evidence of a claimant's daily activities must consider the full context of the activities, such as whether they were sporadic or punctuated with rest). For example, plaintiff stated that she could not go out to places that required a lot of walking; that she performed only light cleaning and cooking for periods ranging from 20 to 45 minutes at a time; that she shopped once per week for 30-40 minutes; that she visited family members once per week; that she attended school for a learning disability; and that the school accommodated her with

a table, chair, and elevator.  (See AR 54, 204-07.)  Plaintiff's ability to perform activities on this limited basis does not convince the Court that plaintiff engaged in activities that resembled those necessary for engaging in competitive, full-time employment. See Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014) (claimant's performance of basic chores, sometimes with help, and attendance at occasional social events did not show that claimant engaged activities transferable to a work setting); Smolen, 80 F.3d at 1284 n.7 ("[M]any home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."); Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (evidence that claimant did certain chores that did not consume a substantial part of the day did not detract from her credibility); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (claimant's ability to assist with some household chores was not determinative of disability).

The sole remaining reason proffered by the ALJ for his adverse credibility determination was that the evidence of record purportedly documented minimal or mild objective findings from physical examinations, radiographic imaging studies, and diagnostic testing. (See AR 26, 27.) However, since the ALJ's other two reasons were legally insufficient to support his adverse credibility determination, this remaining reason cannot be legally sufficient by itself.  See Robbins v. Social Sec. Admin., 466 F.3d 880, 884 (9th Cir. 2006) (where ALJ's initial reason for adverse credibility determination was legally insufficient, his sole remaining reason premised on lack of medical support for claimant's testimony was legally insufficient); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); cf. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

//

10

1

**CONCLUSION AND ORDER**

2     The law is well established that the decision whether to remand for further

3  proceedings or simply to award benefits is within the discretion of the Court.  See,

4  e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister, 888 F.2d at

5  603; Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).  Remand is warranted

6  where additional administrative proceedings could remedy defects in the decision.

7  See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at

8  635.  Remand for the payment of benefits is appropriate where no useful purpose

9  would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d

10  525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v.

11  Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily

12  delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

13     Where, as here, a claimant contends that she is entitled to an award of benefits

14  because of an ALJ's failure to properly consider her subjective symptom testimony

15  or the medical opinion evidence, the Court applies a three-step framework.  See

16  Treichler, 775 F.3d at 1099-1102; see also Burrell, 775 F.3d at 1141-42; Garrison,

17  759 F.3d at 1020.  First, the Court asks whether the ALJ failed to provide legally

18  sufficient reasons for rejecting evidence, whether claimant testimony or medical

19  opinion.  Second, the Court determines whether the record has been fully developed,

20  whether there are outstanding issues that must be resolved before a determination of

21  disability can be made, and whether further administrative proceedings would be

22  useful.  Third, if the Court concludes that no outstanding issues remain and further

23  proceedings would not be useful, the Court may find the relevant testimony credible

24  as a matter of law and then determine whether the record, taken as a whole, leaves

25  "not the slightest uncertainty as to the outcome of the proceeding."  Treichler, 775

26  F.3d at 1100-01 (citations omitted).  Only when all three elements are satisfied does

27  a case raise the "rare circumstances" that allow the Court to exercise its discretion to

28  remand for an award of benefits.  See id.

1        Here, although the Commissioner has made a lengthy argument under the

2   foregoing authorities that the proper remedy in the event of reversal would be a

3   remand to the Commissioner for further administrative proceedings, plaintiff has

4   made only a cursory assertion that she is entitled to an award of benefits. (See Jt Stip

5   at 23-25.)  The Court deems plaintiff's failure to adequately brief the issue of the

6   appropriate remedy and failure to even reply to the Commissioner's contentions in

7   this regard as a concession to the correctness of the Commissioner's position that

8   remand for an award of benefits is not warranted here.  See Vasquez, 572 F.3d at 597

9   (declining to order an immediate payment of benefits where neither party presented

10  any argument about the effect of the ALJ's errors, meaning that there were no facts

11  presented that clearly indicated the proper outcome).

12       Accordingly, IT IS HEREBY ORDERED that Judgment be entered reversing

13  the decision of the Commissioner of Social Security and remanding this matter for

14  further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[3]

15

16  DATED:  <u>April 24, 2015</u>

17

18                                 ROBERT N. BLOCK

19                                 UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28      [3]       It is not the Court's intent to limit the scope of the remand.

12